IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| KIANA BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OMNI HEALTHCARE FINANCIAL HOLDINGS, OMNI HEALTHCARE FINANCIAL LLC, AND INJURY FINANCE, LLC<br><br>Defendants. | Case No. 3:25-cv-00428<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>*Removed from Mecklenburg County Superior Court, Case No. 25CV018810-590*<br><br>Complaint Served: May 19, 2025 |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446 Defendants Omni Healthcare Financial Holdings, Omni Healthcare Financial LLC, and Injury Finance LLC ("Defendants") hereby remove this putative class action filed by Plaintiff Kiana Brown ("Plaintiff") in the General Court of Justice, Superior Court Division, County of Mecklenburg, North Carolina, Civil Action No. 25CV018810-590, to the United States District Court for the Western District of North Carolina.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. *See* 28 U.S.C. § 113. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a).

**NATURE AND TIMELINESS OF REMOVED ACTION**

3. On April 11, 2025, Plaintiff, on behalf of herself and, purportedly, on behalf of all others similarly situated, filed a "Class Action Complaint" ("Complaint") against Defendants in the General Court of Justice, Superior Court Division, County of Mecklenburg, Civil Action No. 25CV018810-590 ("the State Court Action"). A true and correct copy of the Complaint in the State Court Action is appended hereto as part of **Exhibit A**. Defendant Injury Finance LLC was served with a summons and copy of the Complaint on May 19, 2025. *See* Ex. A. Defendant Omni Financial Healthcare Holdings was served with a summons and copy of the Complaint on May 20, 2025. While Defendant Omni Healthcare Financial LLC has not yet been served a copy of the Complaint, all Defendants consent to this Notice of Removal.

4. This action arises out of the same Incident and asserts substantially similar or overlapping putative class allegations and claims against Defendants as two prior related actions pending before this Court: *Latasha Hammond v. Omni Healthcare Financial Holdings et al.*, No. 3:25-cv-00263 (W.D.N.C., filed Apr. 16, 2025); and *Dawn Hairston v. Omni Healthcare Financial Holdings et al.*, No. 3:25-cv-00266 (W.D.N.C., filed April 17, 2025). In addition, another case arising out of the same Incident and asserting substantially similar or overlapping class allegations and claims was filed in the Northern District of Georgia on May 27, 2025: *E.C. v. Omni Healthcare Financial Holdings d/b/a Omni Healthcare Financial LLC d/b/a Injury Finance, LLC*, No. 1:25-cv-02907-TWT (N.D. Ga.).

5. Like the related actions, Plaintiff alleges that between January 18, 2024, and January 19, 2024, Defendants "had their data servers breached by unauthorized third-party hackers, who stole the highly sensitive protected healthcare information ('PHI') and personal

2

Case 3:25-cv-00428-MOC-DCK   Document 1   Filed 06/18/25   Page 2 of 19

identifying information ('PII') . . . of approximately 16,701 individuals across the United States" (hereinafter the "Incident"). Ex. A, Compl. ¶ 1.

6. Plaintiff alleges that she received notice of the Incident from Defendants, dated April 9, 2025. *See id.* ¶ 15.

7. Plaintiff further alleges that Defendants failed to prevent the Incident and protect her and putative class members' PHI/PII from unauthorized access. *See id.* ¶¶ 3-4. As a result, Plaintiff generally alleges that she and the putative class have suffered or will suffer injuries based on (1) an increased risk of future identity theft and fraud, (2) violation of privacy rights, and (3) have otherwise suffered damages. *See id.* ¶ 6.

8. On behalf of herself, and purportedly on behalf of a nationwide class (*id.* ¶ 83), Plaintiff asserts six causes of action: (i) negligence (*id.* ¶ 92); (ii) breach of implied contract (*id.* ¶ 116); (iii) breach of implied covenant of good faith and fair dealing (*id.* ¶ 126), (iv) failure to implement reasonable security measures, violation of N.C. Gen. Stat §§ 75-65 (*id.* ¶ 135), (v) unfair and deceptive trade practices, violation of N.C. Gen Stat. § 75-1.1 (*id.* ¶ 142), and (vi) quasi-contract/unjust enrichment (*id.* ¶ 150).

9. This Notice of Removal is timely because Defendants filed it within thirty days of being served with the Complaint on May 19 and May 20, 2025. *See* U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period begins when defendant is served with the summons and complaint).

10. In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice as **Exhibit A**.

3

## CAFA JURISDICITON

11. <u>Basis of Original Jurisdiction</u>: This Court has original jurisdiction over this action under CAFA. "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d). Section 1332(d) further provides that, for CAFA jurisdiction to apply, a member of the putative class must be a citizen of a state different from any defendant.

12. As set forth further below, under 28 U.S.C. §§ 1332(d) and 1441(a), Defendants may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than 100 members; (3) Plaintiff and unnamed members of the putative class are citizens of a different states than that of the defendants; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interest and costs.

## THE ACTION IS PLED AS A CLASS ACTION

13. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

14. In her Complaint, Plaintiff alleges that she brings this class action on behalf of herself and on behalf of all other persons similarly situated. *See* Compl. ¶ 4. Plaintiff defines the putative class as follows: "All persons residing in the United States of America who received a data breach notice informing them that their PHI/PII had been breached by unauthorized third

parties as a result of the data breach announced by OMNI[] that occurred between January 18, 2024, and January 19, 2024." *Id.* ¶ 83.

15. Because North Carolina Rule of Civil Procedure 23 is substantially similar to class actions brought pursuant to Federal Rule of Civil Procedure 23, the first CAFA requirement is satisfied.

### THE PUTATIVE CLASS INCLUDES AT LEAST 100 MEMBERS

16. Plaintiff alleges that putative Class Members are "so numerous that the joinder of all members is impracticable." *Id.* ¶ 85. Plaintiff further alleges that, while the exact number of class members may be unknown, "approximately 16,701 individuals across the United States" were impacted. *Id.* ¶¶ 15, 85.

17. Thus, the putative class, as defined by Plaintiff, includes more than the statutorily required minimum of 100 members, and as such, the second CAFA requirement is satisfied.

### MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

18. Under 28 U.S.C. § 1332(d)(2)(A), "the district courts shall have original jurisdiction" over a class action "in which . . . any [named or unnamed] member of a class of plaintiffs is a citizen of a State different from any defendant."

19. <u>Defendants' Citizenship</u>. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and . . . where it has its principal place of business." *Accord Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *13 (D.S.C. Mar. 7, 2023) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (citing 28 U.S.C. § 1332(c)(1))). In the Fourth Circuit, "for purposes of determining subject matter jurisdiction under [CAFA], a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a

5

citizen of the State under whose laws it is organized and the State where it has its principal place of business." *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699–700 (4th Cir. 2010). Here, Plaintiff first sues Defendant Omni Healthcare Financial Holdings, which she alleges is a North Carolina business with its principal place of business in Huntersville, North Carolina. Compl. ¶ 8. Plaintiff also sues Defendant Omni Healthcare Financial, LLC, which she alleges is a Delaware limited liability company with its principal place of business in Huntersville, North Carolina. *Id.* ¶ 9. Finally, Plaintiff sues Defendant Injury Finance, LLC, which she alleges is a Colorado limited liability company with its principal place of business in Denver, Colorado. *Id.* ¶ 10. Thus, for diversity purposes, Defendants are citizens of North Carolina, Delaware, and Colorado.

20. <u>Plaintiff's Citizenship</u>. Plaintiff alleges that she is a citizen and resident of North Carolina. Compl. *Id.* ¶ 7. As such, minimal diversity is met because, as pled, Plaintiff is a citizen of North Carolina and at least one defendant is a citizen of a different state (*i.e.*, Defendant Injury Finance, LLC, a citizen of Colorado).

21. <u>Unnamed Class Members' Citizenship</u>. Additionally, to establish minimal diversity, the Court should consider the citizenship of all class members, including putative class members, both named and unnamed. *See* 28 U.S.C. § 1332(d)(1)(D) ("[T]he term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed . . . .class . . . ."). Thus, minimal diversity under CAFA only requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 569 (E.D.N.C. 2021) (quoting 28 U.S.C. § 1332(d)(2)(a)); *see also Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 145 F.3d 660, 663 (4th Cir.1998) ("[S]tate citizenship for

6

Case 3:25-cv-00428-MOC-DCK     Document 1     Filed 06/18/25     Page 6 of 19

purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile[.]" (citation omitted)).

22. Plaintiff brings claims on behalf of a nationwide putative class: "All persons residing in the United States of America who received a data breach notice informing them that their PHI/PII had been breached by unauthorized third parties as a result of the data breach announced by OMNI[] that occurred between January 18, 2024, and January 19, 2024." Compl. ¶ 83. Significantly, Plaintiffs' defined class is not limited to North Carolina citizens or citizens of any particular state(s). Instead, she pleads that the putative class is comprised of class members in potentially all states—"approximately 16,701 individuals *across the United States*." *Id*. ¶ 15 (emphasis added). *See Priselac*, 561 F. Supp. 3d at 562 (explaining that, in cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state); *Axel Johnson, Inc.*, 145 F.3d at 663 (concluding that evidence of residency was insufficient to show citizenship, nothing that '[a]s the Supreme Court has consistently held, however, state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile.'").

23. Moreover, Plaintiff does not plead a temporal limitation on "residency," let alone citizenship, required for inclusion in her class definition, or any other limitation to clearly limit the class to only "current" residents (or, as required, citizens) of any particular state such that there would not be diversity. *See, e.g.*, *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021) ("But the definition does not limit the class to *current* Florida residents. Rather, it defines the class as persons who 'resided' in the Florida facilities at some point during a four-year period. Thus, the class definition on its face encompasses class members who currently reside in the Florida facilities and those who resided in the facilities during the relevant four-year period but

7

have since moved to another state. Because citizenship for purposes of CAFA jurisdiction is based on *current residency* and an intent to remain, the class definition does not aid the class in establishing either prong of the citizenship requirement"); *Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.,* 810 F.3d 335, 343 (5th Cir. 2016) (exercising CAFA jurisdiction because the class definition did not clearly limit class membership of gas and mineral "owners" to current, Texas citizens); *Anderson v. Davis Wright Tremain LLP*, Case No. 3:20-cv-01194-AC, 2021 WL 7184127, at *1–5 (D. Ore. July 14, 2021) (denying motion to remand and declining to read a temporal limitation into class definition which stated "Class Members are . . . Oregon citizen[s]" and noting that the plaintiff's definition lacked a temporal term like "currently").

24. As pled, Plaintiff pleads claims on behalf of putative class members who likely are citizens of states other than North Carolina, Delaware, or Colorado. Plaintiff herself is a citizen of a state (North Carolina) different than at least one defendant (Injury Finance, LLC-Colorado). Thus, minimal diversity of citizenship is established under CAFA.

**THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD**

25. Under CAFA, the amount in controversy must exceed $5 million, exclusive of interests and costs. See 28 U.S.C. § 1332(d)(2). To determine the jurisdictional minimum, the claims of the individual class members shall be aggregated to determine whether this threshold is met. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

26. Where, as here, a plaintiff does not specify the damages amount sought, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.

8

*Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. Even where a specific amount in controversy is not pled, under CAFA, the claims of the individual class members must be aggregated to determine whether the matter in controversy exceeds the $5 million jurisdictional threshold. This aggregation includes both named and unnamed class members who fall within the definition of the proposed or certified class. *See id.* (explaining that, if the federal court is uncertain about whether the aggregated claims exceed $5,000,000, it should err in favor of exercising jurisdiction.); *Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F. Supp. 2d 489, 498–99 (M.D.N.C. 2003) (explaining that when the amount of damages a plaintiff seeks is unclear, "the court may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue") (citation omitted).

27. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5 million.[1]

28. Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she and any member of the putative class are allegedly entitled for Defendant's alleged negligence. Nevertheless, Plaintiff's requested relief supports a finding that the amount in controversy, in the aggregate, exceeds the $5 million amount-in-controversy threshold. For example, even if not specifically requested in her Complaint, Plaintiff and putative class members could still recover any and all damages under North Carolina law to which they are legally entitled, including potentially general damages, such as compensatory damages, and/or punitive damages if they succeed on their claims.

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended to support, and cannot be construed as an admission, that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny Plaintiff is entitled to recover any amount, and deny that a class can be properly certified in this action.

9

29.     <u>Credit Monitoring Costs.</u> In data incident cases involving similar allegations, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e. g., Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 278 (S.D.N.Y. 2008) (concluding that the amount of "credit monitoring costs for [plaintiff] and for the putative class for an indeterminate period beyond one year" "readily exceed[s] $5 million, exclusive of interests and costs"); *Porras v. Sprouts Farmers Mkt.*, LLC, No. C16-1005, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (three years of credit monitoring at only $15.95 per month for a class of only 8,719 exceeded $5 million amount in controversy); *Abdale v. N. Shore-Long Island Jewish Health SYS., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (considering credit monitoring in amount in controversy exceeding $5 million); *Fielder v. Penn Station, Inc.*, No. C12-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) (CAFA jurisdictional limit exceeded with just two years of credit monitoring alone). Here, Plaintiff pleads that she and Class Members "must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect themselves from future loss." Compl. ¶ 5.

30.     Three main identity-protection agencies—LifeLock, Equifax, and Experian—advertise monthly rates for three-bureau credit-monitoring services for one adult ranging from $19.95 to $24.99 per person per month.[2] For example, LifeLock offers a product, titled Ultimate

---

[2] https://www.equifax.com/personal/products/credit/monitoring-product-comparison/ (last visited June 17, 2025); https://www.experian.com/protection/compare-identity-theft-products/ (last visited June 17, 2025); https://us.norton.com/store?expid=PS-LLBRANDEDGEN&promocode=BPSOFFER&nortoncountry=us&om_sem_cid=hho_sem_sy:~en-us_nor_n36_sch_brn_nau_nfr_adw_dtp_low:nort_lifelock~c_kw0000686434&cq_src=google_a

Plus, that provides credit monitoring with up to $1,000,000 in "stolen funds reimbursement" for $19.99 per month.[3] Equifax also offers a base product, titled Equifax Complete, that provides automatic fraud alerts, the Equifax credit report lock feature, identity restoration, and up to $500,000 for identity theft insurance for $9.95 per month.[4]

31.     Taking the least expensive product—Equifax's $9.99 per month product—and multiplying the cost of just five years of the service for all class members ($9.99/month x 60 months x 16,701 class members), the total cost would be $10,010,579.40 Taking LifeLock's Ultimate Plus plan and applying the same calculation ($19.99/month x 60 months x 16,701 class members), the total cost would be $20,031,179.40.

32.     <u>Private Information</u>. Plaintiff alleges that Defendants failure "to implement and maintain reasonable security procedures and practices appropriate to protect the PHI/PII of Plaintiff and the Class members" will result in additional theft and identity fraud. Compl. ¶ 71. Moreover, Plaintiff alleges that due to the possibility of that identity theft, "Plaintiff and class members will bear a heightened risk of injury for years to come." *Id*. ¶ 61. Plaintiff also alleges that "PII can be sold at a price ranging from $40 to $200" *Id.* ¶ 51. Taking Plaintiff's own allegations at face value and applying them to the number of notified addresses, damages—for just this alleged harm—theoretically range from $668,040 (16,701 addresses x $40) to $3,340,200 (16,701 addresses x $200).

---

ds&cq_cmp=1967423177&cq_net=g&gad_source=1&gclid=EAIaIQobChMIoKGM582jigMVx xWtBh1rcBvYEAAYASAAEgJGlvD_BwE&gclsrc=aw.ds (last visited June 17, 2025).

[3] https://lifelock.norton.com/?%20srsltid=A%20fmBOop8%20V%20DK%20Wk2spleGQ234u47 9LoZo2QTQGsN9DRm-I-n3R30ZZN-cz (last visited June 17, 2025).

[4]  https://www.equifax.com/personal/products/value-product-comparison/ (last visited May 23, 2025).

33.     <u>Injunctive Relief</u>. Plaintiff seeks equitable and injunctive relief compelling "Omni to implement appropriate safeguards and to submit to periodic compliance audits (Compl. ¶ 141) and for "Omni to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class members the type of PHI/PII compromised." Compl. Prayer for Relief. The Fourth Circuit requires courts to consider the value of injunctive relief as part of the amount in controversy. *Auto Money N. LLC v. Walters*, 737 F. Supp. 3d 330, 342 (D.S.C. 2024). Specifically, the Fourth Circuit follows the" either-party rule," which means that the amount in controversy is measured by the value of the object of the litigation, considering either the benefit to the plaintiff or the cost to the defendant. *See id*. The court will consider whichever figure is larger: the benefit to the plaintiff or the cost to the defendant. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (the court noting that the value of an injunction for amount in controversy purposes is ascertained by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant). Thus, the cost of injunctive relief, as requested by Plaintiff, would only further increase the aggregated amount in controversy.

34.     <u>Disgorgement Request</u>. Next, Plaintiff alleges unjust enrichment on behalf of herself and putative class members. Compl. ¶¶ 150-55. Under the claim, Plaintiff seeks to require Defendants to "to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by Defendants from their wrongful conduct and/or the establishment of a constructive trust from which Representative Plaintiffs and Class Members may seek restitution." *Id*. ¶ 155. Assuming Plaintiff and each of the 16,701 putative class members could demonstrate that Defendants prioritized "its own profits over the requisite security," essentially, that Plaintiff

12

and putative class members "overpaid" for Defendants services, these damages would easily exceed the $5 million amount-in-controversy requirement under CAFA.

35. <u>Total Amount in Controversy</u>. As pled, the above alleged damages estimation exceeds the $5 million amount-in-controversy threshold as required under 28 U.S.C. § 1332(d)(2).

**EXCEPTIONS TO CAFA JURISDICITON DO NOT APPLY**

36. Congress "enacted CAFA to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 168 (4th Cir. 2018) (quotations and citation omitted), *aff'd*, 587 U.S. 435 (2019). Courts "are obliged to construe and apply CAFA's grant of federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 (4th Cir. 2019); *see Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *see also* S. Rep. No. 109-14, at 43, 45 (2005) (explaining that CAFA's provisions granting federal court jurisdiction "should be read broadly," and that removal exceptions should be "narrowly construed"). This approach ensures that close questions are resolved in favor of removal to federal court, reflecting CAFA's intent to address perceived abuses of the class action device in state courts. *See Jackson*, 880 F.3d at 168.

37. Section 1332(d) of CAFA requires: (1) minimal diversity; (2) an amount in controversy greater than $5,000,000; and (3) a class action with at least 100 members. *See Priselac*, 561 F. Supp. 3d at 569 (citations omitted). "When the foregoing three criteria . . . are satisfied, a defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court." *Dominion Energy, Inc.*, 928 F.3d at 330 (citing 28 U.S.C. § 1453(b)).

13

38. The three exceptions relevant to CAFA jurisdiction are (1) the local controversy exception, (2) the home state exception, and (3) the discretionary remand exception. *See Quicken Loans Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013); *Cook v. S.C. Pub. Serv. Auth.*, No. 6:19-CV-03285-TLW, 2020 WL 869741, at *6 (D.S.C. Jan. 21, 2020); *see also* 28 U.S.C. § 1332(d)(3)–(4). The local controversy and home-state exceptions require the Court to decline jurisdiction if two-third (sixty-seven percent) or more of all proposed plaintiff classes in the aggregate and a "significant" defendant or "the primary defendants" are citizens of the state where the class action was originally filed. 28 U.S.C § 1332(d)(4)(A)–(B); *see Quicken Loans Inc.*, 737 F.3d at 964; *Cook*, 2020 WL 869741, at *6. Under any CAFA exceptions, it is the party seeking remand who must prove that one of CAFA's exceptions to removal applies. *Dominion Energy, Inc.*, 928 F.3d at 336. And any doubt about the applicability of the CAFA exceptions are resolved against the party seeking remand. *See id*.

39. With more than 16,701 putative class members, but with no allegations as to their domicile, Plaintiff has not established that two-thirds or more are citizens of North Carolina, without speaking directly to each of those thousands of individuals, such that the local controversy or home-state exceptions apply.

40. Significantly, "[d]omicile requires physical presence, coupled with an intent to make the State a home." *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Several factors have been used as evidence of intent to make a state a home including: "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Bowen v. Houser*, No. CA 3:10-02398-MBS, 2011 WL 380455, at *7 (D.S.C. Feb. 3, 2011) ("[I]n determining intent, district courts can consider

'places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.'" (quoting *Preston v. Tenet Healthsystem Meorial Med. Ctr., Inc.,* 485 F.3d 793, 797–98 (5th Cir. 2007))). However, residency by itself is insufficient to establish citizenship. *Advance Am.,* 549 F.3d at 937 n. 2.

41. District courts in the Fourth Circuit have held that a party seeking remand under a CAFA exception must do more than set forth residency numbers. *See Craft v. S.C. State Plastering, LLC*, 2016 WL 11608327, at *4 (D.S.C. Sept. 8, 2016) (denying remand under local controversy exception because the plaintiff's evidence "that only 6.67% of the potential class members have a secondary residence" and "only 18.75% of the potential class members [were] assessed at the six percent tax ratio for non-owner-occupied homes" was insufficient to establish that class members were "both United States citizens and . . . domiciled in South Carolina."); *Bowen*, 2011 WL 380455, at *8 (denying remand under local controversy exception because although the "Plaintiffs have provided evidence that . . . class members reside in South Carolina, . . . residency is insufficient to establish domiciliary intent"). Neither Defendants nor Plaintiff can determine the states of domicile for each member of the putative class for the Court to invoke the local controversy exception or home state exception.

42. Additionally, the discretionary exception to CAFA, which is often referred to as the "interests of justice" exception, also does not apply here. 28 U.S.C. § 1332(d)(3). The discretionary exception, codified under 28 U.S.C. § 1332(d)(3), provides the district court with the discretion to decline jurisdiction "over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

43. For the same reasons discussed above that the Court cannot find that greater than two-thirds of the putative class are citizens of North Carolina without specific evidence of citizenship, it cannot find that greater than one-third of the putative class are North Carolina citizens.

## STATE COURT NOTICE AND SIGNATURE

44. As required by 28 U.S.C. § 1446(d), Defendant is promptly providing written notice of the filing of this Notice of Removal to Plaintiff's counsel and is filing a copy of this Notice of Removal with the Clerk in the State Court Action.

45. This Notice is signed pursuant to Federal Rule of Civil Procedure 11. *See* 28 U.S.C. § 1446(a).

## RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

46. Nothing in this Notice of Removal is intended to be, or should be construed as, an express or implied admission by Defendants of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of Defendants' rights, claims, remedies, and defenses in connection with this action.

WHEREFORE, Defendants hereby remove this action from the General Court of Justice, Superior Court Division, County of Mecklenburg, North Carolina to the United States District Court for Western District of North Carolina, so this Court may assume jurisdiction over the case as provided by law.

Dated: June 18, 2025                                    Respectfully submitted,

**McGUIREWOODS LLP**

*/s/ Elizabeth Zwickert Timmermans*
Elizabeth Zwickert Timmermans
N.C. State Bar No. 40205
501 Fayetteville Street, Suite 500
Raleigh, NC 27601

Telephone: (919) 755-6576
Email: eztimmermans@mcguirewoods.com

Robert A. Muckenfuss
N.C. State Bar No. 28218
Jessica O'Brien Peretz
N.C. State Bar No. 56679
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2000
Email: rmuckenfuss@mcguirewoods.com
Email: jperetz@mcguirewoods.com

**BAKER & HOSTETLER, LLP**
Christopher A. Weich*
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Telephone: (404) 459-0050
Email: cwiech@bakerlaw.com

Catherine A. Chiodo*
1735 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Telephone: (215) 568-3100
Email: cchiodo@bakerlaw.com

(**Pro Hac Vice* forthcoming)

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system and was served on all parties through their counsel via electronic mail as follows:

Daquan Blyther
SOLOMON LAW GROUP, LLC
Post Office Box 1866
Columbia, SC 29202
Email: daquan@solomonlawsc.com

Thiago M. Coelho*
Chumahan B. Bowen*
Jennifer Leinbach*
WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Email: thiago.coelho@wilshirelawfirm.com
　　　　chumahan.bowen@wilshirelawfirm.com
　　　　jennifer.leinbach@wilshirelawfirm.com
*pro hac vice forthcoming

*Attorneys for Plaintiff and Proposed Class*

**This** 18th day of June, 2025.

　　　　　　　　　　　　　　　　　　*/s/ Elizabeth Zwickert Timmermans*
　　　　　　　　　　　　　　　　　　N.C. State Bar No. 40205
　　　　　　　　　　　　　　　　　　MCGUIREWOODS LLP

　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

# **CERTIFICATION**

Pursuant to this Court's June 18, 2024, Order regarding the use of artificial intelligence, the undersigned states that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 18th day of June, 2025.

*/s/ Elizabeth Zwickert Timmermans*
N.C. State Bar No. 40205
MCGUIREWOODS LLP

*Counsel for Defendants*
